In the Matter of ABRAHAM KAFFENBURGH, an Attorney,
Appellant.

ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK,
Respondent.

1. ATTORNEYS — REFUSAL TO ANSWER QUESTIONS UPON THE GROUND
THAT ANSWERS MIGHT INCRIMINATE, NO GROUND FOR DISBARMENT.
An attorney at law, when called as a witness, has the right to refrain from
answering any question which might lead to the prosecution of himself
for a forfeiture of his office of attorney and counselor at law; his refusal,
therefore, to answer questions as to personal transactions upon the ground
that his answers might tend to incriminate him, is not a sufficient cause
for his disbarment. (Code Civ. Pro. § 837.)

2. ALLEGED AID TO CLIENT OUT ON BAIL, TO ESCAPE. An attorney is
not guilty of unprofessional conduct sufficient to cause his disbarment,
in chartering a boat to take his client out of the state after he had been
admitted to bail pending proceedings instituted for his extradition to
another state, in the absence of a charge or evidence that his client
intended to forfeit his bail or that he intended to reach another jurisdic-
tion where he could not be re-arrested or compelled to return, or that his
attorney was assisting him in carrying out an unlawful purpose.

3. DISBARMENT — PRACTICING UNDER NAME OF DISBARRED ATTOR-
NEY. An attorney who continues to practice under the name of a firm
by which he was employed as a clerk, one member of which is dead and
the other disbarred, is guilty of unprofessional conduct justifying his dis-
barment; he is not protected by the Partnership Law (L. 1897, ch. 420,
§ 20), and by filing, under an arrangement with the disbarred partner to
continue his trade name and practice, a certificate with the county clerk
to the effect that he is continuing the business under the name of the firm
in compliance with section 363b of the Penal Code; those provisions must
be read in connection with those of section 72 of the Code of Civil Pro-
cedure, and so read, such attorney not only became liable for the
penalties therein provided, but he attempted to nullify the order of the
court by arranging to do for the disbarred partner in his name that which
the court prohibited such partner from doing himself.

*Matter of Kaffenburgh*, 115 App. Div. 346, affirmed.

(Argued February 18, 1907; decided March 5, 1907.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
November 14, 1906, removing the appellant herein from his

4

office as an attorney and counselor at law of this state and striking his name from the roll of attorneys.

The facts, so far as material, are stated in the opinion.

*John B. Stanchfield* for appellant. The refusal of Mr. Kaffenburgh to answer questions asked him as a witness, on the ground that the answers thereto might tend to incriminate him, did not constitute professional misconduct. (*Matter of Cohen,* 115 App. Div. 227.) The facts alleged as to the conduct of Mr. Kaffenburgh in Texas, where he was not acting as an officer of the courts of this state, did not constitute misconduct in such office; and the facts alleged do not prove professional misconduct wheresoever committed. (*Matter of Eldridge,* 82 N. Y. 161.) Mr. Kaffenburgh, under the circumstances, was lawfully entitled to practice law in the business name of "Howe & Hummel." The word "business," as used in the statutes relating to partnerships and business names, includes the business of practicing law. Even if this were not so, Mr. Kaffenburgh was guilty at most of a pardonable mistake as to the law of the situation, upon which lawyers might honestly differ, a mistake in no way involving moral turpitude, and not constituting a punishable offense. (*Goddard* v. *Chaffee,* 2 Allen, 395; *Doe* v. *Keeling,* 1 M. & S. 100; *Ragsdale* v. *Nagle,* 106 Cal. 332; *L.-T. H. Co.* v. *P. S. Mfg. Co.,* 86 Tex. 143; *Abel* v. *State,* 90 Ala. 631; *White* v. *R. G. W. Ry. Co.,* 25 Utah, 346; *State* v. *Boston Club,* 45 La. Ann. 585; *People ex rel. Parker Mills* v. *Comr. of Taxes,* 23 N. Y. 242; *Preiss* v. *Le Poidevin,* 9 N. Y. S. R. 695.)

*Howard Taylor* for respondent. The admitted facts are sufficient to warrant the disbarment of the appellant. (*Matter of Eldridge,* 82 N. Y. 161.)

HAIGHT, J. These proceedings were instituted upon the petition of The Association of the Bar of the City of New York, who, through its attorney, Howard Taylor, presented

a petition to the Appellate Division of the Supreme Court of the first department, charging the defendant with being guilty of malpractice, deceit or crime and gross unprofessional conduct in his office as attorney and counselor at law.

The first charge is, in substance, that he was a clerk in the office of Howe & Hummel, a law firm in the city of New York, and that upon the trial of Hummel for conspiracy the defendant was called as a witness and asked several questions tending to elicit his connection with the matters pertaining to such alleged conspiracy and that he refused to answer each and all of the questions as to his personal transactions, on the ground that his answers might tend to incriminate him, and that in so refusing he was intentionally deceiving the court or else his connection with these matters was criminal.

The second charge is to the effect that the firm of Howe & Hummel were attorneys for one Charles W. Morse who was endeavoring to have a decree in divorce annulled and that one Charles F. Dodge had been indicted for committing perjury in such proceeding; that he had gone to Texas where he was apprehended, and that proceedings had been instituted by the district attorney to procure his extradition; that in order to prevent such extradition Hummel had sent David May, his copartner, Cohen and the defendant, who was his nephew and a clerk in his office, to Texas to endeavor to keep Dodge from being extradited; that proceedings had been there instituted by them in the Texas courts which went eventually to the Supreme Court of the United States; that Dodge had been admitted to bail in Texas and during the time that he was out on bail it is charged that "Kaffenburgh chartered a boat to take Dodge over to Mexico. This failed because the captain refused to put in at any Mexican port, having only a coast license; Kaffenburgh and Dodge were caught by Texas Rangers, both under assumed names."

The third charge is that after Hummel had been convicted of a crime in connection with the proceeding and had been disbarred by the Supreme Court, the defendant filed a certificate in the office of the county clerk, to the effect that he was

transacting law business under the name of Howe & Hummel, and that in the supplement of the Copartnership Directory Howe & Hummel is given as the business name of Abraham H. Kaffenburgh, and that there is upon the new trial calendar in the county a large number of cases in which plaintiff or defendant is represented by Howe & Hummel. It is further charged that although defendant knew that Hummel had been disbarred he entered into an arrangement with him by which Hummel's trade name and practice were to be continued.

It appears that the firm of Howe & Hummel was formerly composed of William F. Howe and Abraham H. Hummel; that they had conducted the practice of law under the firm name of Howe & Hummel for many years; that Howe died several years ago and after his death Hummel continued the practice of the law under the old firm name.

Upon the return of the proceedings before the Appellate Division the defendant filed an answer in which he denied that he had been guilty of malpractice, deceit or crime, or gross unprofessional conduct with which he was charged. He did not, however, specifically deny any of the acts charged against him as constituting the three charges upon which the Bar Association asked for his disbarment, and the case was thereupon submitted to the court upon the pleadings.

With reference to the first charge, the Code of Civil Procedure (§ 837) provides that "a competent witness shall not be excused from answering a relevant question, on the ground only that the answer may tend to establish the fact, that he owes a debt, or is otherwise subject to a civil suit. But this provision does not require a witness to give an answer, which will tend to accuse himself of a crime or misdemeanor or to expose him to a *penalty or forfeiture;* nor does it vary any other rule, respecting the examination of a witness." (U. S. Const. art. 5; State Const. art. 1, § 6; Code of Criminal Procedure, § 10.) In *People ex rel. Taylor* v. *Forbes* (143 N. Y. 219, 227) it is said that: "These constitutional and statutory provisions have long been regarded as safeguards of civil liberty, quite as sacred and important as the privileges

of the writ of habeas corpus or any of the other fundamental guaranties for the protection of personal rights. When a proper case arises, they should be applied in a broad and liberal spirit, in order to secure to the citizen the immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed. The security which they afford to all citizens against the zeal of the public prosecutor, or public clamor for the punishment of crime, should not be impaired by any narrow or technical views in their application to such a state of facts as appears from the record before us. The right of a witness to claim the benefit of these provisions has frequently been the subject of adjudication in both the Federal and state courts. The principle established by these decisions is that no one shall be compelled in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt or connection with any criminal offense of which he may then or afterwards be charged, or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained."

It will be observed that the provision of our Code applies to penalties or forfeitures as well as crimes or misdemeanors. The defendant, therefore, upon his being sworn as a witness in the action pending against Hummel, had the right to refrain from answering any question which might form the basis of or lead to the prosecution of himself for a forfeiture of his office of attorney and counselor at law. To now hold that by availing himself of such privilege it amounted to a confession of his guilt upon which a forfeiture could be adjudged would, in effect, nullify both the provisions of the Constitution and the statute. We are, therefore, of the opinion that no offense was stated in the first charge upon which he could properly be convicted.

As to the second charge, the facts as alleged are not denied. The only question raised with reference thereto is as to whether crime or unprofessional conduct on the part of the

defendant is alleged. He, as a clerk in Hummel's office, went to Texas to endeavor to prevent the extradition of Dodge. Dodge had been arrested in that state, and proceedings by habeas corpus had been instituted. Pending the proceedings, or the review thereof, Dodge had been admitted to bail. During the time he was so out on bail Kaffenburgh " chartered a boat to take Dodge over to Mexico. This failed because the captain refused to put in at any Mexican port, having only a coast license." It is not contended that a lawyer may not properly serve his client in preventing him from being extradited from one state to another, except in accordance with law. It will be observed that there is no allegation that Dodge had forfeited his bail, or that he intended to forfeit the same, or that in going to Mexico he intended to remain and not render himself amenable to the process of the court, in case there should be a decision adverse to him. It is now claimed on the part of the prosecution that it was Dodge's intention to forfeit his bail and to reach another jurisdiction, so that he could not be rearrested or compelled to return to the state of New York to be placed upon trial upon the indictment found against him and that the defendant was planning, aiding and assisting him in so escaping. On the other hand, it is claimed he was but taking a trip for pleasure without any intent or purpose to evade the process of the courts. We think, in the absence of an allegation as to the purpose, that the courts cannot properly assume that his intentions were unlawful or that the defendant was assisting him in carrying out an unlawful purpose. In this connection, it is also stated that " Kaffenburgh and Dodge were caught by Texas Rangers, both under assumed names." When? Whether before or after the adverse decision, or for what purpose they were caught is not stated. It is not charged that they were attempting to escape arrest and that in doing so they had assumed fictitious names or that they had done any act that subjected themselves to an arrest. It is said on their behalf that the proceedings instituted had attracted much attention on the part of the

press and public and that they assumed fictitious names for the purpose of avoiding notoriety. Here again, we think the allegations of fact are too vague and indefinite and that the court cannot properly assume that the purpose of Dodge or the defendant was unlawful.

A more troublesome question is presented by the third charge. As we have seen, Howe, who was the head of the firm of Howe & Hummel, had been dead for several years. In the meantime the business had been carried on under the old firm name by the surviving partner, Hummel. He, however, had been convicted of a crime and had been disbarred, thus terminating his right to practice law under his own or the firm name. Thereupon the defendant, who was a clerk in his office, filed a certificate in which he claims the right to carry on the practice of the law in the name of the old firm, and this, under an arrangement with Hummel to continue his trade name and practice. Under the provisions of the Code of Civil Procedure a writ or other process issued out of a court of record, including a summons and pleadings, must be subscribed or indorsed by *the attorney for the party* at whose instance it was issued. (§§ 24, 417, 421, 520, 566 and 641.)

It thus appears that there are requirements in the practice of the profession which necessitate the use of the true name of an attorney, or at least that of the firm to which he belongs. The Code of Civil Procedure (Sec. 72) further provides that " If an attorney knowingly permits a person not being his general law partner, or a clerk in his office, to sue out a mandate, or to prosecute or defend an action in his name, he, and the person who so uses his name, each forfeits to the party, against whom the mandate has been sued out, or the action prosecuted or defended, the sum of fifty dollars, to be recovered in an action." Undoubtedly the defendant, during his clerkship in the office of Howe & Hummel, while the firm or the surviving member thereof was conducting the practice of the law, under the direction of his employer, in the conduct of the cases in which the firm had been retained, could use the name of the firm as such clerk, but after the death of Howe and

the disbarment of Hummel his position as law clerk, of necessity, ceased and could no longer be maintained, for the reason that Hummel could not thereafter carry on the practice of the law or maintain a clerk to do it in his name. It is, therefore, apparent that the defendant, in attempting to practice law in the name of Howe & Hummel, and in signing such name to the writ, process and pleadings, not only violated the provisions of this section of the Code and became liable for the penalties therein provided for, but he enabled Hummel to evade the order disbarring him by arranging to perpetuate his trade name and continue his business. He now claims that he is protected by the Partnership Law and the notice which he has filed. Under the provisions of the Partnership Law business may be conducted under a firm name. Section 20 provides that " The use of a partnership or business name may be continued in either of the following cases : 1. Where the business of any firm or partnership in this state * * * which has transacted business in this state for not less than three years, continues to be conducted by some or any of the partners, their assignees or appointees." (L. 1897, ch. 420.) Section 363b of the Penal Code provides that " No person or persons shall hereafter carry on or conduct or transact business in this State under any assumed name or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact, or intend to conduct or transact such business, a certificate setting forth the name under which such business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the post office address or addresses of said person or persons."

It is suggested that the practice of the law by an attorney or a law firm is not a business, and, consequently, is not brought within the provisions of these statutes. It is quite

true that the profession of the law is not regarded as a busi-
ness in a commercial sense, but the organizing of a firm or
copartnership and the selecting of a firm name, the practice of
the profession thereunder and the establishing of a reputation
and all that pertains thereto gives it the character of business,
and it may be that these statutes apply to copartnerships
among attorneys in so far as is consistent with their duties to
their clients and to the courts under their oaths of office and
the provisions of the Code with reference to the practice of
the profession in their own name or that of a copartnership to
which they belong. But we are inclined to the view that the
Partnership Law and the provisions of the Penal Code
alluded to must be read in connection with the provisions of
section 72 of the Code of Civil Procedure, to which we have
already referred; and, therefore, when the defendant under-
took to file a certificate under the provisions of the Penal
Code, selecting a name under which he proposed to carry on ·
the practice of the law, he could not thereby evade or nullify
the provisions of that section, nor could he nullify the order of
the court, by arranging to do for Hummel in his name that which
the court has prohibited him from doing himself. The defend-
ant has not shown himself to be a partner, an assignee or an
appointee of the firm of Howe & Hummel, within the require-
ments of the Partnership Law, and he is not now in a position
in which he can acquire such a right. Howe being dead, noth-
ing can be acquired from him; Hummel being disbarred, he
cannot practice law or authorize others to do so for him or on
his account in his or the firm's name. We, therefore, conclude
that as to the last charge the conviction must be sustained and
the order affirmed, with costs.

CULLEN, Ch. J., VANN, WERNER and CHASE, JJ., concur;
GRAY, J., concurs in result; EDWARD T. BARTLETT, J., not
sitting.

Order affirmed.