In the Matter of the PRESENTMENT BY THE GRAND JURY for the Extraordinary Special and Trial Term of the Supreme Court, Kings County, of Charges with Reference to Alleged Professional Misconduct of JOSEPH A. SOLOVEI, an Attorney, Respondent.

Second Department, February 26, 1937.

*Adolph Feldblum* and *Charles J. Buchner*, counsel designated by Appellate Division to prosecute charges.

*Harold H. Corbin* [*Mark F. Hughes* and *Miller, Owen, Otis & Bailly* with him on the brief], for the respondent.

PER CURIAM. Disciplinary proceedings which involve consideration of the report of Hon. Norman S. Dike, official referee, on charges made to this court against Joseph A. Solovei, respondent, by a grand jury of the Extraordinary Special and Trial Term of the Supreme Court, appointed in December, 1935, by the Governor.

A grand jury impaneled in the County Court of the county of Kings in April, 1935, was considering a crime known as the Drukman murder case. At the time, respondent was the attorney for the Luckmans, who were then suspected of being involved in the crime. The April, 1935, grand jury failed to find a true bill. In November another grand jury found an indictment against three persons, including the two Luckmans, for murder in the first degree. There was no prosecution of that indictment. In December, 1935, the Governor appointed an Extraordinary Special and Trial Term of the Supreme Court in and for the county of Kings. The grand jury of that term indicted three persons, including the two Luckmans, for murder in the first degree on January 17, 1936. On February 20, 1936, the three defendants were convicted of murder in the second degree and sentenced to imprisonment for from twenty years to life. The extraordinary grand jury, which was authorized so to do, also indicted certain persons, including one Singer, an attorney and counselor at law and office associate of respondent, and one Anzalone, for the crime of conspiracy to obstruct justice. Respondent was named as a co-conspirator in the indictment. Singer was convicted. He has appealed to this court. Anzalone pleaded guilty and sentence was suspended.

The extraordinary grand jury presented charges to this court against respondent, as follows:

I. He was a party to a conspiracy to obstruct justice in the Drukman case.

II. He solicited one Hogan to commit the crime of embracery with a grand juror of the April, 1935, grand jury.

III. He reproached one Carmine Anzalone for having failed in an attempt to influence a member of the April, 1935, grand jury.

IV. He falsely testified before the extraordinary grand jury in stating he had never talked to any person with reference to such person's communicating or having communicated with a member of the April, 1935, grand jury of Kings county with reference to the Drukman murder case.

V. He refused to waive immunity with respect to the testimony to be given by him before the grand jury for the Extraordinary Special and Trial Term.

The charges were referred by this court to an official referee to hear and report thereon. The official referee recommends dismissal of all the charges, except the one dealing with failure of respondent to waive immunity. As to that, he recommends suspensation from the practice of the law for one year, or, in any event, a severe censure.

The official referee had full opportunity of observing the witnesses, their demeanor and manner of testifying; their relation to the subject-matter of the charges and their attitude toward them were disclosed to him; evasions, inconsistencies, contradictions, concealments, and even falsehoods, were all brought to his attention and he became acquainted with the history of their lives. So, by personal contact, he was enabled to weigh and evaluate their testimony. He has found that the first four charges had not been proved, and recommends dismissal. An examination of the record leads this court to the conclusion that the determination of the official referee as to these first four charges should be confirmed.

Refusal of the respondent to waive immunity involves a question of law. The exact question has never before been presented to any court in this country. A similar question, however, has been decided by the Court of Appeals (*Matter of Kaffenburgh*, 188 N. Y. 49). In that case, upon the petition of the Association of the Bar of the City of New York, proceedings were instituted against a lawyer, called the defendant in the opinion. One of the charges was that he was a clerk in the office of Howe & Hummel, a law firm in the city of New York, and upon the trial of the latter for conspiracy, defendant was called as a witness and asked several questions tending to elicit his connection with the matters pertaining to the conspiracy; that he refused to answer each and all of the questions as to his personal transactions on the ground that his answers might tend to incriminate him, *and in so refusing he was intentionally deceiving the court, or else his connection with those matters was criminal.* After referring to the State Constitution (Art. 1, § 6) and to *People ex rel. Taylor* v. *Forbes* (143 N. Y. 219), where it is said that these constitutional and statutory provisions have long been regarded as safeguards of civil liberty, the court among other things stated: " It will be observed that the provision of our Code applies to penalties or forfeitures as well as crimes or misdemeanors. The defendant, therefore, upon his being sworn as a witness in the action pending against Hummel, had the right to

refrain from answering any question which might form the basis of or lead to the prosecution of himself for a forfeiture of his office of attorney and counselor at law. To now hold that by availing himself of such privilege it amounted to a confession of his guilt upon which a forfeiture could be adjudged would, in effect, nullify both the provisions of the Constitution and the statute. We are, therefore, of the opinion that no offense was stated in the first charge upon which he could properly be convicted."

In *Matter of Rouss* (221 N. Y. 81) the meaning of the decision in *Matter of Kaffenburgh (supra)* was stated by Cardozo, J., as follows: "Kaffenburgh had refused to answer when called as a witness upon the trial of an indictment for conspiracy. He put his refusal on the ground that the answer would tend to criminate him. That was before the enactment of section 584 of the Penal Law. Disbarment proceedings were afterwards begun, and the charge was made that the refusal to answer was professional misconduct. That charge was not sustained either in the Appellate Division or in this court. Disbarment was ordered, but on other grounds. Much that was said was in reality unnecessary to the decision. There was no occasion to determine whether Kaffenburgh's refusal to testify was proper because it tended to expose him to a forfeiture of office. He had placed his refusal on the ground of a tendency to criminate him, and that of itself was sufficient to sustain him."

If a lawyer is not amenable to discipline for refusing to answer a question during a trial on the ground that it would tend to incriminate him, then surely if he refused to waive immunity before appearing before a grand jury he should not be the subject of discipline. In the former situation he is in open court where the trial is under the observation of the public, including the press. Grand jury proceedings are secret, and what goes on there is known only to the participants.

Of course, if an attorney refuse to testify upon the ground that his testimony would tend to incriminate him, and this is done in bad faith, then there is no immunity. (*Matter of Levy*, 255 N. Y. 223.)

The question of good faith is not involved here, (1) because the respondent was willing to answer any questions which would be asked of him, and (2) since this was a proceeding dealing with a conspiracy to obstruct justice, the respondent could have been compelled to testify whether he was willing or not. (Penal Law, § 584.) By section 584 of the Penal Law no one is excused from testifying before any court, magistrate or referee, upon any investigation, proceeding or trial relating to any violation of any of the

provisions of the article of the Penal Law dealing with conspiracy, upon the ground that the testimony may tend to convict him of a crime or to subject him to a penalty or forfeiture. It is also provided that no such person shall be prosecuted or subjected to any penalty or forfeiture because of that concerning which he has testified, and the testimony may not be received against him upon any criminal investigation, proceeding or trial. So, if the prosecuting attorney had wished, he could have examined the respondent to the fullest extent concerning the subject-matter under investigation. The respondent's willingness to testify, as well also the provisions of section 584 of the Penal Law, is an answer to the charge that, because he refused to waive immunity, he was endeavoring to conceal a wrong. Although he could not be prosecuted, any testimony that was given indicating a wrong could be used in disbarment proceedings, since disbarment is not a penalty or forfeiture within the meaning of section 584 of the Penal Law. (*Matter of Rouss*, 221 N. Y. 81.) The minutes of the grand jury are available for that purpose. (*People ex rel. Hirschberg* v. *Supreme Court*, 269 N. Y. 392.)

Further consideration of this charge would be unnecessary were it not for what seems to be a casual remark in *Matter of Levy* (*supra*), where the court had under consideration charges against an attorney who had refused to answer questions on the ground that they would tend to incriminate him, and his good faith in refusing to answer. There the court stated: " We pass as unnecessary for consideration at this time the question whether the assertion in good faith of the privilege against self-incrimination is ground for disbarment." Two of the judges who sat in the case sat in *Matter of Rouss* (*supra*), where CARDOZO, J., indicated that *Matter of Kaffenburgh* (*supra*) decided that an attorney who in good faith refused to answer questions on the ground that they would tend to incriminate him was not amenable to disciplinary proceedings. It is not for this court to anticipate any change in the views of the Court of Appeals as they are set forth in *Matter of Kaffenburgh* and *Matter of Rouss* (*supra*).

The recommendation of the official referee as to the charge numbered V is overruled. In view of the foregoing, the proceeding against the respondent is dismissed.

LAZANSKY, P. J., HAGARTY, CARSWELL and ADEL, JJ., concur; DAVIS, J., concurs in result, with memorandum.

DAVIS, J. (concurring in result). The determination in respect to the questions of fact concerning conspiracy, embracery, and false testimony amounts to the Scotch verdict of " not proven." We are limited to the charges presented.

As to his refusal to waive immunity as a witness, he had the right to rely on the privilege given him by the Constitution. When a public official or an attorney asserts that right, he must expect that unfavorable inferences will be drawn by the public generally in the absence of a satisfactory explanation. So it is with others who take refuge behind such constitutional protection. Standing alone, the refusal of an attorney to waive immunity is not a sufficient ground for disbarment, particularly where the lawyer did in fact testify, thereby gaining immunity, and it did not appear that his refusal was entirely arbitrary and without reason.

The recommendation of the official referee as to charges numbered I, II, III and IV is confirmed. As to charge numbered V the recommendation is overruled. The proceeding is, therefore, dismissed.