The People of the State of New York ex rel. John J. Coyle, Appellant, *v.* Bert Truesdell, Under-Sheriff of the County of Orange, N. Y., Respondent.*

The People of the State of New York ex rel. Oscar G. Massie, Appellant, *v.* Bert Truesdell, Under-Sheriff of the County of Orange, N. Y., Respondent.*

Second Department, April 8, 1940.

*Jacob A. Decker*, for the appellant John J. Coyle.

*Max Levinson*, for the appellant Oscar G. Massie.

*Edward G. O' Neill, Assistant Attorney-General*, of counsel [*John J. Bennett, Jr., Attorney-General; Raymond P. Whearty, Assistant Attorney-General*, with him on the brief], for the respondent.

* See 172 Misc. 593.

HAGARTY, J. By indictment, filed on the 29th day of July, 1939, the extraordinary grand jury of the county of Orange charged the appellants with the crime of conspiracy, in that they unlawfully conspired with each other, with Abraham Klapkin, William H. Hambidge, and with divers other persons, to bribe one John L. Sloan, a public officer. It is alleged that each defendant, during the period involved, was engaged in the retail grocery store business in the city of Newburgh, that each was selected and designated by Sloan to supply and provide foodstuffs and other like commodities for the relief of persons for whose relief Sloan, in his official capacity, was responsible, and that the conspiracy contemplated the giving to Sloan of five per cent of all relief orders received by the defendants, for the purpose of influencing the placing with them of such orders.

Prior to the return of this indictment, and on the 2d day of March, 1939, the appellants were subpoenaed to appear before the grand jury, were there sworn, and testified to a limited extent. Consequently, they claim that they were afforded immunity from prosecution of the crime for which they were indicted. This claim is based on section 584 of the Penal Law, providing in substance, that no person shall be excused from attending and testifying in any proceeding for, relating to, or concerned with, a violation of any of the provisions of the article in the Penal Law having to do with the crime of conspiracy, on the ground that such testimony may tend to convict him of a crime, but that no person so testifying shall be prosecuted " for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial." It is conceded that these appellants did not sign a waiver of immunity pursuant to the provisions of section 2446 of the Penal Law.

The constitutional provision, reiterated in section 10 of the Code of Criminal Procedure, is that no person shall " be compelled in any criminal case to be a witness against himself, * * *." (State Const. art. 1, § 6.) In lieu of this protection, we find in the Penal Law various provisions affording immunity to those witnesses who give testimony relating to specified crimes, of which section 584 of the Penal Law is illustrative. When coextensive with the protection provided by the constitutional provision, this cloak of immunity enables a prosecuting officer to compel a person to testify in a criminal proceeding, even though the testimony adduced involves self-incrimination. (*People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253, 267; *People ex rel. Lewisohn* v. *General Sessions,*

96 App. Div. 201; affd., 179 N. Y. 594.)   These immunity statutes (Penal Law, §§ 381, 584, 996), coupled with that relating to waiver of immunity (Penal Law, § 2446), have resulted in the creation and recognition of principles of law differing in nature and extent from those resulting from the constitutional right of a witness to refuse to testify against himself.

Where the constitutional provision, unaffected by an immunity statute, is directly involved, the necessity of invoking constitutional protection is dependent upon the attendant circumstances.   (*People* v. *Ferola*, 215 N. Y. 285, 289, 290.)   In a proceeding before a grand jury, this question depends upon whether the individual is called as a witness in a general investigation or in a proceeding looking toward his own indictment.   (*People* v. *Gillette*, 126 App. Div. 665; *People* v. *Bermel*, 71 Misc. 356; *People* v. *Singer*, 18 Abb. N. C. 96; *People* v. *Rauch*, 140 Misc. 691.)   Testimony of one accused, improperly received before a grand jury, while resulting in dismissal of an ensuing indictment, does not preclude reindictment before another grand jury.   (*People* v. *Bermel, supra; People* v. *Singer, supra.*)

Where an immunity statute is in effect, the witness has no election.   He is required to testify, but receives immunity.   (*Matter of Solovei*, 250 App. Div. 117, 120, 121; *Matter of Seymour* v. *Larkin*, 254 id. 215; *People* v. *Reiss*, 255 id. 509, 512.)   If his testimony be perjurious, he may be indicted and prosecuted for the crime of perjury.   (*People* v. *Kramer*, 257 App. Div. 598.   Cf. *People* v. *Bermel, supra.*)   Thus it follows that a witness no longer has the right to elect whether or not to testify, but the right of election is with the prosecuting officer who, by the act of compelling a witness to testify, in the absence of a waiver, affords the witness immunity from prosecution.   For the same reason, there is no longer a distinction between the status of a witness about to be accused and one called as an incident to a general investigation. The testimony of the witness, in either case, carries immunity along with it automatically.

Recognizing these principles of law, the question in these cases resolves itself to a determination as to whether or not these appellants gave testimony which might be utilized in obtaining their conviction under the indictments.   To afford immunity, it is not necessary that testimony should amount to an admission of guilt. It is sufficient if it might constitute a link in the chain of evidence against them.   (*People ex rel. Lewisohn* v. *O'Brien, supra; People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219, 228, 229.)   In the *Lewisohn* case (*supra*), in an investigation to determine whether or not one Canfield was conducting a gambling establishment at certain

premises, the relator was asked if ever in his life he had been at that address. His refusal to answer was held justified by the Court of Appeals, BARTLETT, J., writing (p. 268): " It is quite impossible for the court to say to what extent the witness, if he answered, would be criminated or placed in jeopardy. He might be subjected to proceedings involving penalty or forfeiture; he might be tried and convicted as a common gambler, which is declared by statute to be a felony. All this might be accomplished without using his evidence against him, if given herein."

In the present case it appears that sometime prior to the appearance of the appellants before the grand jury, and on the 3d day of February, 1939, each appellant voluntarily appeared at the headquarters of the prosecuting officers and made a statement tending to implicate himself and others, referring to alleged payments made by him to Sloan. These statements were in evidence before the grand jury. We may assume that each offered to appear before the grand jury. The fact remains that each appeared pursuant to subpœna, signed no waiver, was duly sworn and testified.

The transcript of the colloquy and testimony of the appellant Coyle discloses a conscientious effort on the part of the prosecuting officers to explain to him his constitutional right to refuse to testify, as well as the meaning and significance of a waiver of immunity. Unfortunately, proof was adduced, incidentally, with respect to the circumstances attending the taking of the statement. The witness was asked to recall the morning of the 3d day of February, 1939, when he had gone to headquarters with a lawyer, Klapkin, and the codefendant-appellant. In response to questions with respect thereto, he admitted, in effect, that his statement had been made after his constitutional rights had been explained to him. This testimony confirmed the fact that he had made the statement implicating himself in the crime with which he is now charged, and was to the effect that it had been made freely and at a time when he was cognizant of his constitutional rights. This was testimony which could be used against him if the claim developed on the trial that the statement was unlawfully procured from him and if he attempted to avoid or nullify the effect of it.

The appellant Massie is in much the same position. After giving his address, he was asked if that was his store or residence, to which he replied, " Residence and store both." Thus it was established that he had a store at " 101 Liberty Street." It is quite conceivable, in the light of the nature of the charge, that witnesses would be called to testify that directions were given to them, attributable to Sloan, to go to this store to secure commodities. By this testi-

mony, the appellant admits that it is his store. This may very well be a link in the chain of proof against him. In addition, in connection with the explanation as to his constitutional rights and the use of anything he might say against him at the time he made his statement to the prosecuting officers, the following appears: " Q. You have been told that before by us?  A. I think you told us that, yes."

The testimony by each of these appellants was material, and applying the test recognized in the authorities considered, the result was to afford the appellants complete immunity.

As to each appellant, the order dismissing the writ of habeas corpus should be reversed on the law, the writ sustained, indictment dismissed and appellant discharged.

In each proceeding separately: LAZANSKY, P. J., CARSWELL, TAYLOR and CLOSE, JJ., concur.

In Coyle proceeding: Order dismissing writ of habeas corpus reversed on the law, the writ sustained, indictment dismissed and appellant discharged.

In Massie proceeding: Order dismissing writ of habeas corpus reversed on the law, the writ sustained, indictment dismissed and appellant discharged.