In the Matter of MICHAEL H. GRAE, an Attorney, Appellant.
HAROLD M. KENNEDY, Respondent.

Argued March 4, 1940; decided April 16, 1940.

*Stephen Callaghan* and *Ralph Stout* for appellant. Appellant was justified in refusing to sign the waiver of immunity presented for his signature upon the investigation, and his refusal in good faith to sign such a waiver of immunity affords no basis for a disciplinary proceeding against him. (*Matter of Palmieri*, 221 N. Y. 611; *Matter of Zanger*, 266 N. Y. 165; *Matter of Solovei*, 250 App. Div. 117; 276 N. Y. 647; *Matter of Schneidkraut*, 231 App. Div. 109; *Matter of Cohen*, 115 App. Div. 900; *Matter of Kaffenburgh*, 188 N. Y. 49; *Matter of Rouss*, 221 N. Y. 81; *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465; *Matter of Eldridge*, 82 N. Y. 161; *People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219.)

*Harold M. Kennedy*, in person, *Robert Abelow* and *Murray M. Halwer* for respondent. Appellant endeavored to thwart and impede the investigation ordered by the Appellate Division and such action on his part was in bad faith. (*Matter of Kaffenburgh*, 188 N. Y. 49; *Matter of Rouss*, 221 N. Y. 81; *Matter of Solovei*, 250 App. Div. 117; 276 N. Y. 647; *Matter of Levy*, 255 N. Y. 223; *People ex rel. Karlin* v. *Culkin*, 248 N. Y. 465; *Matter of Fenn*, 128 S. W. Rep. [2d] 657.)

LEWIS, J.   We review an order of the Appellate Division suspending the appellant from the practice of the law upon proof of a single charge that, upon an inquiry, ordered by that court, into certain alleged unlawful and unethical practices impairing the administration of justice, he refused to sign a waiver of immunity.

On June 8, 1938, the Appellate Division, second department, in response to a petition by the Richmond County Bar Association, ordered an inquiry " * * * into certain alleged unlawful and unethical practices impairing the due administration of justice, including the practice of so-called ' Ambulance Chasing ' and the conduct of attorneys with reference thereto, the solicitation by attorneys or their agents of claims in condemnation proceedings and the prosecution of damage actions, and the solicitation by

attorneys or their agents in criminal cases, including also, the state of calendars and the trial of causes in the County of Richmond." It will be convenient to refer to the investigation thus ordered as the " inquiry."

In the course of proceedings which followed and on July 14, 1938, the appellant was called before a Special Term of the Supreme Court designated to conduct the inquiry, at which time he was asked whether he would be willing to waive immunity. Appellant replied that he did not intend to do so but that he was willing to answer all questions at the direction of the Presiding Justice and would bring to the hearings his office records and " everything that the Court desires." Then occurred the following colloquy between the special prosecutor and the appellant: " Q. And you know, as a lawyer, that if that course is followed that you will have immunity from any prosecution? A. I do, yes. Q. And your purpose in refusing to waive immunity here is to secure that immunity, is that it? A. Well, I don't know how I can answer that question to you. I think I am entitled to my constitutional rights the same as any other person. Q. But you told me before you thought you were entitled to immunity? A. Yes, I am entitled to it under the Constitution. Q. And that is the position that you take? A. Yes."

Thereafter the special prosecutor sent to the appellant a letter stating that under instructions by the Presiding Justice and in view of appellant's expressed willingness to furnish his office records, request was made that he produce (1) a complete list of personal injury cases in his office for the last three years with certain data in reference to each case; (2) his office ledger or docket showing disbursements made against each of said cases, and (3) his check book and canceled vouchers for that period. The appellant responded by letter stating that upon receiving a notice to appear at the inquiry he would bring with him the records which the special prosecutor had requested provided he was permitted to explain them before the Presiding Justice. No response

was received to this offer by the appellant. In fact he received no communication from any one connected with the inquiry until November 21, 1938, when he was served with a copy of the petition in the disciplinary proceeding now before us which petition is signed by the special prosecutor who had acted as counsel to the inquiry at Special Term. It is addressed to the Appellate Division and asks that disciplinary action be taken against the appellant by reason of his refusal to waive immunity from prosecution for any of his acts in connection with his practice or otherwise. It asserts that by his course of conduct the appellant willfully and knowingly concealed facts connected with his practice or otherwise which were " incriminating and degrading;" that his conduct and concealment were in part a mere pretext to enable him to withhold information which he was in duty bound to divulge in accord with the provisions of section 88 of the Judiciary Law (Cons. Laws, ch. 30) and that such conduct served to impede and defeat the inquiry ordered by the Appellate Division. The appellant's answer alleges that upon being called as a witness at the inquiry conducted by the Special Term he had stated his willingness in good faith to answer fully all questions that might be asked of him; to produce for inspection and examination his office records and to assist the inquiry to the fullest extent, but that he had respectfully declined to sign a waiver of immunity basing such declination upon his constitutional rights and privileges and the advice of counsel.

Thereupon the Appellate Division appointed an Official Referee to take testimony in the present disciplinary proceeding. The record comprises only testimony by the appellant, including a transcript of his testimony, outlined above, which he had given at the inquiry. It appears from his testimony herein that prior to his appearance as a witness upon the inquiry at Special Term he had learned from news articles in the current local press and from other sources, that those in charge of the inquiry were investigating matters of a criminal nature in connection with the practice of

attorneys in Staten Island. Thereafter, upon his appearance at the inquiry, he was asked to sign a written waiver of immunity which provided that, pursuant to section 2446 of the Penal Law, the signer waived all immunity, and the privilege which he would otherwise obtain by giving testimony at the inquiry, from indictment, prosecution, punishment, penalty or forfeiture, on account of any transaction concerning which he might testify or produce evidence in the inquiry ordered by the Appellate Division, " * * * or in any other investigation, or on any inquiry, trial, action, investigation or other proceeding, before any magistrate, judge or Justice, counsel or attorney, court or other tribunal, grand jury or otherwise, conducting an inquiry, investigation or legal proceeding relating to the matters embraced in the said order of the said Court, dated the 13th day of June, 1938, or matters connected therewith or related thereto." The waiver also provided that the signer waived any and all privilege given to him by sections 381 and 584 of the Penal Law and any and all privilege which he would otherwise " obtain against the use against [him] of the testimony so given or the evidence so produced upon any criminal investigation, prosecution or proceeding."

In explanation of why he had refused to sign a waiver of immunity the appellant testified that although he had no fear that there was anything in the conduct of his professional life which would be productive of either criminal or disciplinary charges, he had practiced law in Staten Island for a period of fifteen years during which time his work as an attorney might have engendered in the minds of certain individuals an unfriendly attitude toward him of such a nature as to produce charges of a criminal nature of which he was innocent. It is his testimony that by reason of that fact and upon advice of counsel, he refused to sign the written waiver of immunity which was presented to him for signature when he was called to testify at the inquiry ordered by the Appellate Division.

In considering appellant's reason for refusing to sign a waiver of immunity we note the fact that the verified petition by which the present disciplinary proceeding was instituted and which was signed by the special prosecutor appointed to aid the Special Term in conducting the inquiry, contains the allegation that by refusing upon the inquiry to sign a waiver of immunity the appellant "wilfully and knowingly concealed and intended to conceal facts, acts and deeds, either connected with his practice of law or otherwise, some of which facts, acts and deeds were *incriminating* and degrading." It is thus made to appear that the risk of prosecution, apprehended by the appellant, for acts connected with his practice and of a nature alleged to be "incriminating," was not unreal.

Finding in the circumstances disclosed by the record reasonable ground for appellant's belief that his own professional acts might become the object of the inquiry and might eventually subject him to criminal prosecution, we reach the question, did his refusal to sign a waiver of immunity constitute conduct prejudicial to the administration of justice, within the provisions of section 88, subdivision 2, of the Judiciary Law, sufficient to warrant disciplinary proceedings against him?

A waiver of immunity is a means authorized by statute (Penal Law, § 2446 [L. 1912, ch. 312]) by which a witness, in advance of giving testimony or producing evidence, may renounce the fundamental right and privilege guaranteed to him by the Constitution, that no person shall "be compelled in any criminal case to be a witness against himself." (N. Y. Const. art. I, § 6.)

It has been suggested that the inquiry ordered by the Appellate Division was not strictly a criminal proceeding. But where inquisition in such a proceeding may expose a witness to punishment for crime, he may invoke as his protection the constitutional privilege. (*Matter of Rouss*, 221 N. Y. 81, 86.) He may not claim the privilege "when he is clearly contumacious, not acting in good faith but

making the claim as a mere pretext to avoid giving non-incriminating answers." (*Matter of Levy*, 255 N. Y. 223, 225.) But our courts have recognized the difficulty in most cases of anticipating the effect upon a witness of his answer to a given line of inquiry and so it has been ruled that, in the absence of conduct by a witness which is clearly contumacious, the witness must be permitted to judge for himself as to the effect of his answer. (*People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219, 230, 231. Cf. *Matter of Levy*, *supra*, p. 225.)

The finding by the Official Referee that the refusal by the appellant to sign a waiver of immunity constituted bad faith finds no supporting proof in the record. On the contrary, his willingness, expressed in open court upon the inquiry, to answer fully all questions at the direction of the court and to produce his office records, eliminates bad faith as a factor in this proceeding. (*Matter of Solovei*, 250 App. Div. 117, 120; affd., 276 N. Y. 647.) Nor do we find proof to support the finding that appellant's conduct was part of a concerted endeavor with others to thwart and impede the investigation.

The privilege against self-incrimination is a constitutional guaranty of a fundamental personal right. Long regarded as a safeguard of civil liberty it was firmly imbedded in the law of England and by the Fifth Amendment to the Federal Constitution became a basic principle of American constitutional law. " It is a barrier interposed between the individual and the power of the government, a barrier interposed by the sovereign people of the State; and neither legislators nor judges are free to overleap it." (*Matter of Doyle*, 257 N. Y. 244, 250.) Applying this basic principle to our present problem we have no doubt that when the appellant, as a witness upon the inquiry at the Special Term, declined to sign a waiver of immunity and thus refused to relinquish in advance a privilege which the Constitution guarantees to him, he was within his legal right. As was said by Presiding Justice LAZANSKY in *Matter of Ellis* (258

App. Div. 558, 572), expressing the minority view at the Appellate Division: " The constitutional privilege is a fundamental right and a measure of duty; its exercise cannot be a breach of duty to the court."

It follows that, upon the facts disclosed by the record, the present disciplinary proceeding instituted against the appellant, wherein the single offense charged is his refusal to yield a constitutional privilege, is unwarrantable.

The order of the Appellate Division should be reversed, without costs, and the proceeding dismissed.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Order reversed, etc.