Desmond, Ch. J.
By an order of the Appellate Division, Second Department (one Justice dissenting) petitioner, admitted to the Bar in 1922, has been disbarred from the practice of law. The disbarment order was made after a hearing and on findings that he had refused to answer pertinent questions put to him during a “ Judicial Inquiry and Investigation ” (Judiciary Law, § 90) ordered by the Appellate Division and held before a Supreme Court Justice assigned by that court. The “ Inquiry and Investigation” was concerned with charges of alleged illegal, corrupt and unethical practices and of alleged conduct prejudicial to the administration of justice, by attorneys and others acting with them, in the County of Kings, where appellant had his law office. Appellant’s refusal to answer was on the stated ground that the answers might tend to iucriminate him. On this appeal he argues that the disbarment order was, contrary to law and in violation of his right to due process of law, made solely because of his refusing to answer questions, in good-faith reliance on his constitutional privilege (N. Y. Const., art. I, § 6) against self incrimination. The Appellate Division held that he was not disciplined for invoking his constitutional privilege but because, in his capacity and status as a lawyer, he had deliberately breached his inviolable and absolute duty to co-operate with the court in a valid and proper investigation of unethical practices. A lawyer, wrote the Appellate Division, “ cannot remain mute, thereby sterilizing the power of the court and frustrating its inquiry into unethical practices, and yet be permitted to retain his privilege of membership in an honorable profession.”
There is no dispute as to the facts and no real dispute as to the legality of this kind of general investigation or “ Judicial Inquiry ” (Judiciary Law, § 90; People ex rel. Karlin v. Culkin, *493 248 N. Y. 465). On two occasions appellant appeared before the Supreme Court Justice presiding at the inquiry. He was represented by his own counsel. The counsel for the inquiry explained the nature of and authority for the inquiry. Appellant and his attorney were informed by the inquiry’s counsel and by the court that this was an investigation and not an adversary proceeding (see Anonymous v. Baker, 360 U. S. 287, 291; People ex rel. Karlin v. Culkin, 248 N. Y. 465, 479, supra), that there were no respondents or defendants, that appellant was “not being charged with anything” but Avas to be questioned as to pertinent facts ‘ ‘ Avithin the scope of the Inquiry ’ ’ and which were thought to “ bear on or relate to your professional conduct ’ ’, also that counsel for the inquiry had ‘ ‘ information that indicates your participation in professional misconduct”.
Counsel for the inquiry then put into evidence 228 “ Statements of Betainer ” Avhich during the years 1954 through 1958 appellant had filed with the Appellate Division in obedience to its Special Buie 3 which requires that an attorney who makes contingent-fee agreements for his services in personal injury, Avrongful death, property damage, and certain other kinds of cases, must file such agreements Avith the court and, if he enters into five or more such agreements in any year, mnst give to the court in writing certain particulars as to hoAV he came to be retained. Put into evidence, also, Avhen appellant appeared before the judicial inquiry Avere 76 other such statements of retainer filed during the same period by the laAV firm of Cohen & Bothenberg, with which appellant apparently had some association. Counsel for the inquiry informed appellant and the court that all these retainer statements were offered in evidence “as a basis for some of the questions to follow ’ ’.
Appellant answered a few preliminary questions as to how long and where he had practiced law. About 60 other questions were asked of him during the two days (six months apart) on which he was on the witness stand but, on advice of his counsel who was present in court, he refused to answer any of them (except questions as to whether he had failed in any case to comply with Special Buie 3 and except as to questions about maintaining a separate office bank account) on the ground that answers might tend to incriminate or degrade him or expose *494 him to a penalty or forfeiture. Those unanswered questions related to the identity of his law office partners, associates and employees, to his possession of the records of the cases described in his statements of retainer, to any destruction of such records, to his bank accounts, to his paying police officers or others for referring claimants to him, to his paying insurance company employees for referring cases to him, and to his promising to pay to any “ lay person ” 10% of recoveries or settlements. He was asked — and refused to answer — as to whether he had made or agreed to make such payments to any of several named persons, as to whether he had hired or paid nonlawyers to arrange settlements of his cases with insurance companies and as to whether his partner or associate Bothenberg had been indicted for and had pleaded guilty to violations of sections 270-a and 270-d of the Penal Law which forbid the solicitation of legal business or the employment by láwyers of such solicitors. At one stage of this questioning counsel for the inquiry pointedly called to appellant’s attention section 90 of the Judiciary Law which gives the Appellate Divisions power and control over lawyers and authority to punish professional misconduct or conduct prejudicial to the administration of justice. At that time the inquiry’s counsel cited Canon 22 of Professional Ethics requiring lawyers to be candid and frank when before the court, Canons 28 and 29 forbidding the payment of awards to persons bringing in legal business and requiring lawyers knowing of such practices to inform the court thereof, Canon 34 outlawing division of fees except with other lawyers; also sections 270-a, 270-c, 270-d and 276 of the Hew York Penal Law, all relat-. ing to soliciting and fee splitting. Counsel for the inquiry warned appellant and his counsel that “ serious consequences ” might flow from his refusal to answer by way of a “ recommendation to the Appellate Division.” Appellant’s counsel replied that he was relying on Matter of Grae (282 N. Y. 428) and Matter of Ellis (282 N. Y. 435) as holding that there could not be any “ consequence ” to lawyers for “ doing what they had an absolute legal right to do ’ ’. Appellant was given a further opportunity to answer but persisted in his refusal, all this being admitted in his pleading in this proceeding.
The Supreme Court Justice presiding at the judicial inquiry then filed with the Appellate Division a transcript of the proceedings before him with a recommendation that disciplinary *495 proceedings be instituted against appellant. The Appellate Division directed respondent Hurley, counsel to the inquiry, to commence this disbarment proceeding. Appellant’s answer says that there is only an issue as to whether he was within his rights under section 6 of article I of the New York State Constitution, in pleading the privilege. The case, however, is not so simple. Of course, he had the right to assert the privilege and to withhold the criminating answers. That right was his as it would be the right of any citizen and it was not denied to him. He could not be forced to waive his immunity (Matter of Ellis, 282 N. Y. 435, supra). But the question still remained as to whether he had broken the “ condition ” on which depended the “ privilege ” of membership in the Bar (see Judge Cakdozo in Matter of Rouss, 221 N. Y. 81, 84). “ Whenever the condition is broken, the privilege is lost.” (Matter of Rouss, supra, pp. 84-85). Appellant as a citizen could not be denied any of the common rights of citizens. But he stood before the inquiry and before the Appellate Division in another quite different capacity, also. As a lawyer he was ‘ ‘ an officer of the court, and, like the court itself, an instrument * * * of justice ” (Chief Judge Cakdozo in People ex rel. Karlin v. Culkin, 248 N. Y. 465, 470-471, supra), with the inevitable consequences that the court which was charged with control and discipline of its officers had its own right to demand his full, honest and loyal co-operation in its investigations and to strike his name from the rolls if he refused to co-operate. 'Such “ co-operation ” is a “ phrase without reality ’ ’ as Chief Judge Cakdozo wrote in People ex rel. Karlin v. Culkin (supra, p. 471) if a lawyer after refusing to answer pertinent questions about his professional conduct can retain his status and privileges as an officer of the court.
The solution to our problem is clear when we consider the lawyer’s special position. “ The court’s control over a lawyer’s professional life derives from his relationship to * * * the court ” (Theard v. United States, 354 U. S. 278, 281). “ Membership in the bar is a privilege burdened with conditions ’ ’ (Matter of Rouss, 221 N. Y. 81, 84, supra). Those conditions must not be arbitrary but the proper and appropriate ones are numerous. An attorney’s contractual right to collect as fees a percentage of settlements or recoveries may validly be limited by court rule (Gair v. Peck, 6 N Y 2d 97, cert, denied 361 U. S. 374). He may be required to represent, without fee, indigent *496 defendants. He cannot solicit retainers or employ, others to solicit them for him, or divide his fees with laymen (Penal Law, §§ 270-a, 270-b, 270-c, 270-d, 276)'. If he knows of such practices by others, he must inform the court (Canon 29). He must be candid and frank with the court at all times (Canon 22). Not only must he meet educational requirements and prove his character and fitness before being admitted to-the Bar but he is subject throughout his professional life to investigation as to whether he continues in the possession of those qualities (Judiciary Law, § 90).
The key word is “ duty ” and the imposition on a lawyer by tradition and positive law of strict and special duties produces this situation where, at the very time that he is exercising -a common privilege of every citizen in refusing to answer incriminating inquiries, he is failing in his duty as a lawyer and endangering his professional life. Breach of the special duty brings a special penalty. Lawyers are not the only citizens whose duty to answer is inconsistent with the exercise of the constitutional privilege. So it is with police officers (Christal v. Police Comm., 33 Cal. App. 2d 564; Canteline v. McClellan, 282 N. Y. 166) and with certain other public employees (Matter of Lerner v. Casey, 2 N Y 2d 355, affd. 357 U. S. 468; Beilan v. Board of Educ., 357 U. S. 399). The latest in this line of decisions is. Nelson v. Los Angeles County (362 U. S. 1). Nelson and Globe had been ordered by their employer, the county, to answer any questions asked of them by a Congressional subcommittee before which they had been subpoenaed. There was a California statute making it the duty of any public employee so subpoenaed to answer any questions as to his membership in any organization advocating the forceful overthrow of the United States Government, etc. Nelson and Globe refused to answer the subcommittee’s questions on Fifth Amendment grounds and they were thereupon discharged from their county employment. The United States Supreme Court, following Beilan and Lerner. (supra), held that they had been validly separated from their employment not for invoking their constitutional privilege but • for insubordination under California law. The majority opinion in the Supreme Court stated that, if these men had simply refused without more to answer the subcommittee’s questions, the county could certainly have discharged them and the fact that they *497 chose to place their refusal on a Fifth Amendment claim put the matter in no different posture since their assertion of that claim was not used as a basis for drawing an inference of guilt. In those cited cases the duty to co-operate in investigations by answering relevant questions was found in statutes or constitutions. The lawyer’s duty is found elsewhere — in the common law and in the Canons of Ethics — but it is just as plainly written. In this State a lawyer on admission to the Bar takes the same oath as does a public official (see Judiciary Law, § 466).
The idea that invocation of basic constitutional rights may result, for other reasons, in forfeiture of office or privilege is not a new one. Justice Holmes’ aphorism has become famous: ‘ ‘ The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman ” (McAuliff e v. New Bedford, 155 Mass. 216, 220). The Federal Hatch Act, denying to governmental employees their right of political activity, on pain of dismissal, has been held valid (United Public Workers v. Mitchell, 330 U. S. 75).
Appellant’s reliance is on Matter of Grae (282 N. Y. 428, supra); Matter of Ellis (282 N. Y. 435, supra); Matter of Solovei (276 N. Y. 647) and Matter of Kaffenburgh (188 N. Y. 49). None of those decisions controls us here. The precise question in Grae and Ellis (supra) was as to whether a lawyer who offered to answer all pertinent questions could be compelled in such an investigation to waive immunity in advance of questioning. The holding in each case was that a lawyer like every other citizen is constitutionally privileged not to answer dam-, aging questions. The difference between those cases and the present one may seem slight but it is enough to permit a fresh examination (or re-examination) of the question now directly presented. Likewise as to Kaffenburgh and Solovei (supra): Kaffenburgh’s refusal to testify was at a criminal trial (so in Matter of Cohen, 115 App. Div. 900) and Solovei’s was before a grand jury. Our present appellant by declining to answer may have escaped criminal prosecution and punishment, but he could never, while a member of the Bar, escape the other consequences of his flagrant breach of his absolute duty to the court whose officer he was. That breach was in itself “ professional delinquency ” (Ex parte Garland, 71 U. S. 333, 379) and a valid reason for depriving appellant of his office as attorney.
The order appealed from should be affirmed, without costs.