Ftjld, J.
(dissenting). In order to appreciate the force of today’s decision, it must be borne in mind that we are concerned not with the necessarily vague contours of the Due Process Clause of the Federal Constitution, but with the specific provision of the Constitution of this State that no person shall be compelled to be a witness against himself (art. I, § 6). Eecent Supreme Court decisions (Lerner v. Casey, 357 U. S. 468; Beilan v. Board of Educ., 357 U. S. 399; and Nelson v. Los Angeles County, 362 U. S. 1), whatever their bearing on the present problem, are, therefore, not dispositive of this case. In other words, whether or not this disbarment violates federal constitutional guarantees — and for reasons previously expressed (e.g., Matter of Lerner v. Casey, 2 N Y 2d 355, 373, dissenting), I believe that it does — we need not resolve the federal question. The ease before us may and should be decided, as were Matter of Grae (282 N. Y. 428) and Matter of Ellis (282 N. Y. 435), on an interpretation of our own Constitution, article I, section 6.
I agree that “ strict and special duties ” have been imposed on a lawyer (opinion, p. 496). I cannot, however, persuade myself that a lawyer’s refusal to answer questions, even before a judicial inquiry, on the constitutionally permissible ground that to do so would incriminate him, may be said to constitute a violation of any such duty. (See Matter of Grae, 282 N. Y. 428, supra; Matter of Ellis, 282 N. Y. 435, supra; see, also, People ex rel. Karlin v. Culkin, 248 N. Y. 465, 471.) In the Grae and Ellis cases, the court held that under our State Constitution an attorney’s refusal to sign a waiver of immunity — his refusal to forego reliance on the privilege — could not constitute a ground for disbarment, even though the refusal occurred during the course of a judicial inquiry similar to the one which here concerns us.[1] ****There, too, it was argued that failure to answer *499 was a violation of the lawyer’s duty of co-operation with the court. We rejected that argument and, in the words of Presiding Justice Lazansky who had dissented in the Appellate Division, forthrightly declared that (282 N. Y., at p. 435)
“ ‘ The constitutional privilege is a fundamental right and a measure of duty; its exercise cannot be a breach of duty to the court.’ ”
And, therefore, concluded the court (p. 435),
“It follows that * * * the present disciplinary proceeding instituted against the appellant, wherein the single offense charged is his refusal to yield a constitutional privilege, is unwarrantable.”
The attorneys Grae and Ellis ultimately offered to answer all questions put to them, but, the record makes clear, the offer was based not on a surrender of immunity, but on the specific condition that immunity be granted — by their being compelled to answer questions that might incriminate them. It was for the very reason that the court was unwilling to have immunity conferred on them that it declined to put questions to them without first obtaining a waiver of immunity. Analysis of our opinion, as well as the dissent of Presiding Justice Lazansky (258 App. Div., at pp. 567-575) — which this court explicitly approved (282 1ST. Y., at p. 434) — demonstrates that this court was not merely passing on the consequences of a momentary lapse of courtesy, but was deciding the very point in issue today. Pointedly noting that “the single offense charged [against Grae] is his refusal to yield a constitutional privilege ”, the court unequivocally announced that “ its exercise cannot be a breach of duty to the court ” (282 N. Y., at p. 435).
The attorneys who refused to sign waivers of immunity in those proceedings were not, I am confident, any more co-operative or any more mindful of their “ strict and special duties ” or of their privileged posts in the affairs of men than the present appellant. And, I venture, the motives which prompted Grae and Ellis to assert their privilege were no different from those of the appellant.
Nor do Matter of Grae and Matter of Ellis stand alone in holding .that an attorney’s claim of privilege may not be treated as professional misconduct warranting disciplinary action.
*500 The question now before us first came to this court in 1907 in Matter of Kaffenburgh (188 N. Y. 49). Kaffenburgh was called as a witness on the trial of his employer for conspiracy to obstruct justice. He was asked questions relating to his possible participation in the conspiracy and declined to answer on constitutional grounds. This was one of the charges on which his disbarment was later sought, and as to it this court wrote (p. 53): “The defendant * * * had the right to refrain from answering any question which might form the basis of or lead to the prosecution of himself or a forfeiture of his office of attorney and counselor at law. # * * We are, therefore, of the opinion that no offense was stated in the first charge ’ \ The court’s opinion herein attempts to distinguish Kaffenburgh upon the ground that it involved a trial and not an inquiry into the conduct of lawyers. In point of fact, it was the most serious kind of inquiry into the conduct of lawyers, taking, as it did, the form of a criminal prosecution. The questions put to Kaffenburgh dealt solely with his conduct in the practice of the law and, certainly, he was as much an officer of the court conducting the trial as the appellant here was of the court conducting the judicial inquiry.
Ten years later came Matter of Rouss (221 N. Y. 81), also cited by the majority. That decision, far from overruling Kaffenburgh on this point, actually confirmed it, for the court explicitly declared that “ the charge was made that the refusal to answer was professional misconduct. That charge was not sustained either in the Appellate Division or in this court” (p. 90).
Twenty years after Rouss came Matter of Solovei (276 N. Y. 647, affg. 250 App. Div. 117). As a result of asserted irregularities in connection with a murder investigation in which the respondent therein represented one of the suspects, the Governor appointed an Extraordinary Special and Trial Term of the Supreme Court and a grand jury was drawn for that term. It indicted three persons for murder and, some time later, it also indicted certain others, including an office associate of the respondent, for the crime of conspiracy to obstruct justice. The respondent, named as a coconspirator, declined to waive immunity when questioned by the grand jury. That body thereupon presented charges to the Appellate Division. That court *501 dismissed the charges, stating that “ Matter of Kaffenburgh * * * decided that an attorney who in good faith refused to answer questions on the ground that they might tend to incriminate him was not amenable to disciplinary proceedings ’ ’ (250 App. Div., at p. 121). The Appellate Division also commented on the nature of the proceedings, noting that, if it was not a breach of duty to the court to refuse to co-operate with it in a public trial, as in Kaffenburgh, it was surely no breach to claim the privilege in a private hearing (p. 120). As indicated, we affirmed without opinion.
Although the court in this case places considerable reliance upon People ex rel. Karlin v. Culkin (opinion, p. 495), it is noteworthy that that case did not involve a claim of privilege; the attorney simply refused to be sworn or testify. In affirming an order adjudging him in contempt, the court spoke of the duty of “ co-operation ” owed by an attorney in an inquiry such as the present, but it was careful to indicate that such “ co-operation ” on the part of the lawyer was “subject to his claim of privilege ” (248 N. Y., at p. 471).
It is hardly necessary to say that a scrupulous regard for the constitutional limitation will not leave the disciplinary authority powerless or a guilty attorney immune. If, as counsel for the judicial inquiry stated toward the conclusion of the investigation, there was information indicating the appellant’s “ participation in professional misconduct ”, his unwillingness to testify might have justified institution of a disciplinary proceeding founded on the information at hand. And, if such proceeding were to be brought and the appellant were to stand mute therein, he would have to bear all of the legitimate inferences stemming from the damaging evidence adduced against him. It is also relevant that, where immunity is conferred — by overriding the claim of privilege and compelling the witness to answer the questions — and the testimony shows that he is not fit to continue as a lawyer, he may then be disbarred or otherwise disciplined. (See Matter of Rouss, 221 N. Y. 81, 86 et seq., supra.)
In the present case, however, the appellant’s claim of privilege was the sole ground relied upon to disbar him, and this fact cannot be altered or disguised by styling his conduct a ‘ ‘ refusal to co-operate with the court”. It is to substance that we must *502 look, not to form or labels. The courts should not sanction so easy an avoidance of a constitutional guarantee of a fundamental personal right.
To the charge that it is unthinkable that a lawyer ‘ ‘ can retain his status and privileges as an officer of the court ” after claiming his privilege (opinion, p. 495), I would answer, as did Mr. Justice Lazansky in his dissent in Matter of Ellis (258 App. Div. 558, 573, supra), that the charge “is based upon false assumption. Defiance and affront there cannot be when the act has the sanction of the fundamental law of the land ’ ’. It is, in short, my view that not only section 6 of article I of our Constitution but the decisions of this court considering and construing it require us to set aside the order of disbarment. Failure to do so can only mean that time has eroded the importance and vitality of the constitutional privilege against self incrimination.
I would reverse the order of the Appellate Division.
Judges Dye, Froessel, Van Voorhis, Burke and Foster concur with Chief Judge Desmond ; Judge Fuld dissents in a separate opinion.
Order affirmed.

. Indeed, in the Ellis case (282 N. Y. 435, supra), the court pointed out that Ellis, “ appearing as a witness at the inquiry, not only declined to sign a waiver of immunity * * * but in addition * 6 declined to answer any questions upon the ground that such answers would tend to incriminate or degrade him” (p. 437; see, also, 258 App. Div., at p. 559). Although Ellis later wrote a letter stating that, while he stood upon his refusal to sign a waiver, he was “ willing ” to answer questions put to him, the significant fact is not only that he never did appear as a witness, but that his refusals to answer questions went unpunished.